UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

DARIN HAMILTON and JEROME JONES,

     Defendants.

MEMORANDUM & ORDER
19-CR-54 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Jerome Jones has been indicted for murder while engaged in narcotics trafficking and conspiracy to do the same in violation of 28 U.S.C. §§ 841(b)(1)(A) and 848(e)(1)(A) in connection with the 1992 murder of Robert Arroyo, a member of the Black Rain drug trafficking organization ("Black Rain"). (Indictment (Dkt. 51-3) at ECF pp. 22-25.) According to the Government, Mr. Jones was also a member of Black Rain and, along with co-defendant Darin Hamilton, recruited two other members to kill Mr. Arroyo because they believed he was acting as an informant. (*See* Gov't Mem. in Opp'n to Def. Mot. to Suppress ("Gov't Mem.") (Dkt. 54) at ECF pp. 3-4.)

Upon his arrest for unrelated drug charges on November 20, 2017 in West Virginia, Mr. Jones was interviewed by State Police Corporal L.W. Price, Detective John Roberts of the New York Police Department (NYPD) homicide bureau's cold case unit, and Federal Bureau of Investigations (FBI) Special Agent (SA) Gregory Kies. (Nov. 20, 2017, FD-302 ("302") (Dkt. 51-4) at ECF p. 27.) Mr. Jones now moves to suppress all statements made during the interview, or alternatively, for an evidentiary hearing to determine whether his statements were coerced, in violation of his Fifth Amendment rights. (Def. Mot. to Suppress (Dkt. 51); Def. Mem. in Supp. of Mot. To Suppress ("Def. Mem.") (Dkt. 51-1) at ECF pp. 7, 16.) Separately, Mr. Jones moves for a bill of

1

particulars, arguing that allegations in the indictment are not sufficiently specific to permit him to prepare his defense. (*Id.*) For the following reasons, Defendant's motions to suppress his November 20, 2017 statements and for a bill of particulars are DENIED.[1]

## I. BACKGROUND

### A. Arrest and *Miranda* Waiver

This case arises out of the 1992 murder of Mr. Arroyo. (Indictment at ECF pp. 23-24.) According to the Government, Mr. Jones and Mr. Hamilton were members of Black Rain, which sold cocaine, crack cocaine, and heroin in Queens through the 1980s and early 1990s. (Gov't Mem. at ECF pp. 3-4.) At its peak, Black Rain yielded $10,000 to $15,000 per day in drug sales. (*Id.* at ECF p. 3.) In August 1992, Mr. Jones and Mr. Hamilton allegedly recruited two other members of Black Rain to murder Mr. Arroyo. (*Id.* at ECF p. 4.) On their first attempt, the two gunmen inadvertently shot a different man, who survived the attack. (*Id.*) On September 8, 1992, they shot and killed Mr. Arroyo. (*Id.*)[2]

Twenty-four years later, Mr. Jones was living in West Virginia. On June 1, 2016, state police searched his house pursuant to a warrant based on an affidavit by Cpl. Price. (Def. Mem. at ECF p. 8.) Cpl. Price stated that a confidential informant purchased about $160 worth of crack cocaine from Mr. Jones over the course of several controlled buys. (June 1, 2016 Search Warrant (Dkt. 51-5) at ECF pp. 39-41.) Officers recovered a small quantity of crack cocaine during the search. (*Id.* at ECF p. 42.)

---

[1] The court RESERVES decision on Defendant's general request to join the motions of his co-defendant, Mr. Hamilton, and DIRECTS Mr. Jones to make a motion to that effect and to advise the court of his position on that motion, if he still wishes to make it.

[2] Mr. Hamilton is also charged with the murder of Anthony Lloyd, another member of Black Rain. (Indictment at ECF p. 22.)

On November 20, 2017, state police executed a second search of Mr. Jones's home after an informant purchased approximately $350 worth of crack cocaine from him in another series of controlled buys. (Nov. 13, 2017 Criminal Compl. (Dkt. 51-7) at ECF p. 61; Def. Mem. at ECF p. 8; Gov't Mem. at ECF p. 5.) Mr. Jones was then arrested on drug charges.[3] (Def. Mem. at ECF pp. 8-9.; Gov't Mem. at ECF p. 5.) At the scene, Cpl. Price was accompanied by SA Kies and Det. Roberts. (302 at ECF p. 27.) Cpl. Price arrested Mr. Jones, and SA Kies administered a *Miranda* warning orally and in writing. (*Id.*) Mr. Jones responded "Yeah" to acknowledge each right as it was read to him (*id.*), and subsequently signed a *Miranda* waiver. (Def.'s Advice of Rights ("Waiver") (Dkt. 54-1) at ECF p. 16.) Mr. Jones was transported to the State Police Department in Princeton, West Virginia, where he was interviewed for over six hours by Cpl. Price, SA Kies, and Det. Roberts. (302 at ECF. p. 27; Aff. of Def. Jerome Jones ("Jones Aff.") (Dkt. 58-1) at ECF p. 17.)

Mr. Jones claims that before he was transported to the station, he asked for permission to bring medicine that he takes to manage his diabetes, but the officers denied his request. (Jones Aff. at ECF p. 16.) Mr. Jones stated that he was supposed to take his medicine that morning, and that if he does not take it, his blood sugar can drop, causing seizures. (*Id.*) As a result, he claims that he was under physical stress when he signed the *Miranda* waiver and during the subsequent interview at the police station. (*Id.*) Mr. Jones also contends that he was denied food and water during the interview, which lasted at least six hours, and that he was permitted to go to the bathroom only once. (*Id.* at ECF p. 17.) The FBI's 302 tells a different story. According to SA Kies, Mr.

---

[3] Those charges formed the basis of a 10-count federal indictment to which Mr. Jones ultimately pleaded guilty and for which he is currently incarcerated. *See United States v. Jones*, 17-cr-209 (S.D.W.V. 2017); Judgment (Dkt. 53) at 1-2.

3

Jones was offered food and coffee on several occasions but declined, was provided with water upon request, and was taken to the restroom on several occasions at his request. (302 at ECF p. 27.)

### B. The Interview

In the 302, SA Kies recounts that over the course of the interview, Mr. Jones made several incriminating admissions relating to his own purchase of cocaine since 2010, as well as his affiliation with Black Rain, although he denied involvement with any murders. (*Id.* at ECF pp. 28-30.) Mr. Jones allegedly made admissions or statements regarding:

1) The dates and quantities of cocaine he had purchased since 2010;

2) The structure of the Black Rain organization;

3) His role in the organization: "I was a shooter back [in the 1980s] . . . . I was known to be a gunslinger, not for murders, you're not gonna take what is in my pocket";

4) The location of several drug spots that Black Rain maintained;

5) Black Rain's use of violence;

6) The murders of "Spanish Rob" (identified by the Government as Robert Arroyo) and "Juice" (identified by the Government as Anthony Lloyd); and

7) Black Rain's treatment of informants: "Back then, you paid the price for being an informant, it cost your life."

(302 at ECF pp. 27-30; Gov't Mem. at ECF p. 6 n.2.) Mr. Jones denies making the statements in the 302 and notes that he was incarcerated from 2010 to 2013, undermining the claim that he told the officers that he was regularly purchasing crack cocaine during that time. (Jones Aff. at ECF p. 17-18.)

## II. LEGAL STANDARD

### A. Motion to Suppress Statements

"[I]n cases involving involuntary confessions, [the Supreme Court] enforces the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).[4] However, a suspect may waive his Fifth Amendment rights. "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver . . . . The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). Once validly waived, so the admonition goes, anything the suspect says may be used against the accused in the Government's case in chief. *See id.* at 370. *Miranda* and its progeny require the court to assess the voluntariness of any waiver of the Fifth Amendment right to be free from self-incrimination. *See Miranda*, 384 U.S. at 478-79; *Moran v. Burbine*, 475 U.S. 412, 421 (1986) ("First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.").

When a defendant contests the voluntariness of a *Miranda* waiver, the Government bears the burden of establishing, by a

---

[4] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

preponderance of the evidence, that the waiver was valid. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). If the Government fails to meet its burden, the cure is exclusion from evidence. *See United States v. Anderson*, 929 F.2d 96, 102 (2d Cir. 1991). A waiver or statement is involuntary if it is obtained "under circumstances that overbear the defendant's will at the time it is given." *Anderson*, 929 F.2d at 99. That evaluation is made with reference to "the totality of all the surrounding circumstances, including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *Id.* While the mental state of the defendant is part of that analysis, involuntariness generally cannot be found "[a]bsent police conduct causally related to the confession." *Connelly*, 479 U.S. at 164.

"[W]here a defendant 'supports his motion [to suppress] with moving papers that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question,'" an evidentiary hearing may be appropriate. *United States v. Miller*, No. 18-CR-395 (NGG), 2019 WL 2088248, at *2 (E.D.N.Y. May 13, 2019) (quoting *United States v. Barrios*, 210 F.3d 355, 355 (2d Cir. 2000)). However, "[a]rguments made solely by defense counsel in motion papers cannot by themselves create a factual issue." *Id.* And, "if facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required." *Gentile v. Cty. of Suffolk*, 926 F.2d 142, 148 (2d Cir. 1991). Ultimately, the decision to grant an evidentiary hearing is committed to the court's discretion. *United States v. Chandler*, 164 F. Supp. 3d 368, 378 (E.D.N.Y. 2016).

### B. Motion for a Bill of Particulars

Federal Rule of Criminal Procedure 7(f) permits a defendant to move for a "bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him,

thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). "[W]here the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused," a bill of particulars may be required. *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989). "The function of a bill of particulars is to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010). However, "[t]he proper scope and function of a bill of particulars is not to obtain disclosure of evidence or witnesses to be offered by the Government at trial . . . ." *Feola*, 651 F. Supp. at 1131. "A bill of particulars is not to be viewed as a discovery device . . . , but rather, its sole purpose is to provide information to the defendant sufficient to advise him of the crimes for which he is charged. So long as the defendant is adequately apprised of the charges contained in the indictment to enable him to prepare his defense or to avoid unfair surprise at trial, a bill should not be granted." *United States v. Larracuente*, 740 F. Supp. 160, 163 (E.D.N.Y. 1990).

In determining whether to grant a bill of particulars, the court must consider whether the requested information is necessary to allow the defense to adequately prepare for trial—not whether such information would be merely helpful to the defense. *See United States v. Barret*, No. 10-cr-809 (KAM), 2011 WL 13175738, at *6 (E.D.N.Y. Dec. 27, 2011). "When exercising this discretion, a court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery, and determine whether, in light of the

charges that the defendant is required to answer, the filing of a bill of particulars is warranted." *United States v. Burstein*, No. 10-CR-623 (ARR), 2012 WL 12929661, at *4 (E.D.N.Y. June 14, 2012), *aff'd sub nom. United States v. Rabinowitz*, 645 F. App'x 63 (2d Cir. 2016).

## III. DISCUSSION

### A. Motion to Suppress

#### 1. Voluntariness

##### a. *Applicable Law*

Courts determine the enforceability of *Miranda* waivers on a case-by-case basis, considering the totality of all the circumstances, "including the accused's characteristics, the conditions of interrogation, and the conduct of law enforcement officials." *United States v. Lynch*, 92 F.3d 62, 65 (2d Cir. 1996). "[C]oercive police conduct" is a crucial element of the inquiry, and "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Connelly*, 479 U.S. at 164. "While the defendant's mental condition is a factor in the voluntariness analysis, it is not, by itself and apart from its relation to official coercion, dispositive." *United States v. Cooper*, 19-cr-159 (ARR), 2019 WL 4346263, at *2 (E.D.N.Y. Sept. 12, 2019).

A valid *Miranda* waiver requires that the suspect knowingly and voluntarily agreed to waive his rights. *Moran*, 475 U.S. at 421. To be knowing, the suspect must understand the rights to be waived, and the consequences of waiving such rights. *Id.* To be voluntary, a suspect must freely submit to questioning, absent any official coercion, deception, or intimidation sufficient to overbear the suspect's will to resist official pressure to comply. *Id.*

A suspect's physical distress or mental state may be a factor in the voluntariness inquiry. Where a suspect is in pain or intoxicated but appears alert and lucid, courts have found *Miranda* waivers to be voluntary. *See, e.g., United States v. Siddiqui*, 699 F.3d 690, 707 (2d Cir. 2012), *as amended* (Nov. 15, 2012) (finding statements voluntary because defendant "was lucid and able to engage the agents in coherent conversations despite the pain attendant to her injury"); *United States v. Khalil*, 214 F.3d 111, 121-22 (2d Cir. 2000) (finding statements knowing and voluntary although suspect was in the hospital for surgery at time of questioning because he "was alert and mentally competent at the time of the questioning" despite being in pain); *Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989) (finding statements made while being treated in the ICU for a "serious knife wound" voluntary where suspect "was alert and awake despite his pain" and officers honored his periodic requests to pause the interrogation); *Cooper*, 2019 WL 4346263, at *4 (finding waiver voluntary despite defendant's claims he had not eaten or slept for 24 hours before his arrest because he never communicated his weakened condition to police); *Avincola v. Stinson*, 60 F. Supp. 2d 133, 160 (S.D.N.Y. 1999) (statements voluntary despite "physical manifestations of [defendant's] drug use," because he was alert and appeared to "appreciate the nature and consequences of his statements").

Police coercion is a crucial element to assess voluntariness. *See Connelly*, 479 U.S. at 164. Where there is evidence that police took advantage of a suspect's clearly altered mental state in order to obtain a statement, such statements may be deemed involuntary. *See, e.g., United States v. Taylor*, 745 F.3d 15, 24 (2d Cir. 2014) (finding statement involuntary where suspect had ingested a large quantity of Xanax before the interrogation, fell asleep multiple times throughout the interview, and officers acknowledged having to wake him up and "refocus" him); *see also Mincey v. Arizona*, 437 U.S. 385, 398-99 (1978) (holding

statement involuntary where suspect "had been seriously wounded just a few hours earlier, and had arrived at the hospital 'depressed almost to the point of coma,'" was "evidently confused and unable to think clearly"; was supine "on a hospital bed, encumbered by tubes, needles, and breathing apparatus"; and was "'at the complete mercy' of [the detective], unable to escape or resist the thrust of [the] interrogation"). Courts consider the totality of the circumstances surrounding a statement to police, and if the facts taken as whole indicate a suspect's will was overborne, a court will find the statement involuntary. *See, e.g., Greenwald v. Wisconsin*, 390 U.S. 519, 519-20 (1968) (finding statement involuntary where suspect insisted on his innocence while held overnight without food or his blood pressure medication, was not advised of his constitutional rights, and testified that the only reason he confessed was because "[he] knew they weren't going to leave [him] alone until [he] did."); *Clewis v. Texas*, 386 U.S. 707, 709-12 (1967) (statement involuntary where defendant was held for ten days, appeared to be sick, and was never informed of his rights before signing a formal statement confessing to a crime he had previously denied knowledge of); *Davis v. North Carolina*, 384 U.S. 737, 743-46 (1966) (statement involuntary where defendant was held incommunicado for over two weeks in a jail cell meant only for short-term detention, and fed so little that he shed 15 pounds over the course of the 16-day interrogation).

Conversely, even in the face of "troubling" police conduct, a statement may be deemed voluntary if the defendant agreed to speak despite official pressure. *Green v. Scully*, 850 F.2d 894, 903-04 (2d Cir. 1988) (finding statement voluntary despite police "chicanery" designed to elicit a statement where defendant "candidly admitted" that he confessed of his own volition).

### b. *Analysis*

There is no question that Mr. Jones was subject to a custodial interrogation when he allegedly made the incriminating statements that are the subject of this motion. (*See* Def. Mem. at ECF p. 9; Gov't Mem. at ECF p. 5; Jones Aff. at ECF p. 16.) Further, Mr. Jones acknowledges that he was read his *Miranda* rights, which he waived both orally and in writing. (Jones Aff. at ECF p. 16; *see also* 302 at ECF p. 27.) Thus, the only question is whether his waiver was voluntarily made.

Mr. Jones contends that his *Miranda* waiver and subsequent statements[5] at the November 20, 2017 interview were involuntary because of the physical stress brought about by the deprivation of medication, food, water, and access to a restroom. (Def. Reply to Gov't Mem. ("Def. Reply") (Dkt. 58) at ECF pp. 7-9.) He also asserts that law enforcement acted in bad faith, arguing that the drug arrest was a pretext to interview him on unrelated charges.[6] (*Id.* at ECF pp. 9-10; Def. Mem. at ECF pp. 14-15.)

Crediting Mr. Jones's contentions as true, the court finds them insufficient as a matter of law to warrant suppression of his statements for two reasons. First, although he alleges facts that could, in some circumstances, lead to sufficient physical stress to permit an inference of involuntariness, he fails to adequately allege that he was ever in a state of such severe physical stress as to cause the court to question the voluntariness of his waiver and subsequent statements. Second, Mr. Jones does not allege facts to

---

[5] The court notes again that Mr. Jones denies making the statements that the Government attributes to him in the 302.

[6] Mr. Jones also contends that the officers conducted a second, post-indictment interview in violation of his Sixth Amendment right to counsel. The Government denies that the alleged interview occurred and thus, does not intend to rely upon it. As such, the court does not address that argument further.

suggest that the police acted coercively in order to obtain a *Miranda* waiver or statement against his will.

Mr. Jones claims that because he was "physically stressed" at the time of the waiver and interview, he agreed to waive his rights and speak with police in order to "get the interview over with so [he] could get [his] medicine and take it." (Jones Aff. at ECF p. 16.) However, Mr. Jones's affidavit does not elaborate on what that "physical stress" entailed. Mr. Jones does not allege that he suffered any adverse physical effects from not taking his medicine. (Def. Mem. at ECF pp. 9, 13; Jones Aff. at ECF p. 16.) The only stress he describes is anxiety at the prospect of what might happen if he did not take his medicine at some point. (Def. Mem. at ECF pp. 9, 13; Jones Aff. at ECF p. 16.) Mr. Jones is only able to cite one case, *Greenwald*, where deprivation of a defendant's medication was found to be one factor, among many, that led a court to conclude that a statement was involuntarily made. *Greenwald*, 390 U.S. at 520.

Similarly, Mr. Jones's claim that he was denied food is not sufficient to warrant a finding that his statements were involuntarily made. Where courts have found that deprivation of food created a coercive environment, the food deprivation was one of a multitude of factors creating a clearly coercive environment designed to elicit a confession. *See Clewis*, 386 U.S. at 709-12 (citing deprivation of food as a factor in finding confession involuntary, in addition to: defendant's fifth grade education level, initial interrogation lasting over 38 hours, defendant repeatedly insisting on his innocence, and detention of defendant for over one week before signing a formal statement); *Davis*, 384 U.S. at 742-46 (confession involuntary where defendant had elementary school education level, was held incommunicado for 16 days before confessing, and was fed only two "thin" and "dry" sandwiches per day, with occasional supplements of peanuts, causing him to lose 15 pounds over the course of the 16-day interrogation).

Here, in contrast, Mr. Jones alleges that his request to bring his medicine to the station was denied, and that he did not eat during the six-hour interrogation. He does not claim that his blood pressure dropped or that he had a seizure during the interrogation, nor does he claim to have alerted the officers that he was under any physical stress. Much like the court in *Cooper*, which found a statement voluntary despite the defendant's claim that he had not eaten or slept in the 24 hours before his arrest, the court does not conclude that the officers who interrogated Mr. Jones created a coercive environment based solely on Mr. Jones's claims of physical stress. At no point does Mr. Jones claim that he was not lucid or thinking clearly, or that the officers were aware that he was under physical stress and deliberately disregarded his altered mental state, like the defendants in *Taylor* or *Mincey*. He claims that he was not offered food or drink (which is contested by SA Kies), but he does not claim that officers denied his request for food or drink, which might be evidence of coercion in some circumstances. *See, e.g.*, *Cooper*, 2019 WL 4346263, at *4 (finding defendant's statements voluntary despite claims he hadn't eaten for 24 hours where "he [made] no claim that he asked the officers for food, complained of food or sleep deprivation, or at any time communicated a weakened condition to them").

Further, Mr. Jones does not allege that he ever attempted to revoke his waiver by asking for a lawyer or seeking to end the conversation, which could be evidence of coercion. *See, e.g., Michigan v. Mosley*, 423 U.S. 96, 104 (concluding "that the admissibility of statements obtained after the person in custody has decided to remain silent depends under [*Miranda*] on whether his right to cut off questioning was scrupulously honored"); *Edwards v. Arizona*, 451 U.S. 477, 484 (1981) (holding "that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-

13

initiated custodial interrogation even if he has been advised of his rights"). Nor does he cite any case law supporting the proposition that his anxiety about what might happen if he were not able to take his medication could be a basis to find a statement involuntary. Absent police coercion, his unexpressed anxiety is not enough to establish involuntariness. *See Connelly*, 479 U.S. at 164.

Finally, Mr. Jones's allegations of bad faith on the part of law enforcement are unsupported. It is uncontested that Mr. Jones was indicted and ultimately pleaded guilty to the charges for which he was arrested on November 20, 2017, and for which he is now incarcerated. (Def. Mem. at ECF p. 14; Gov't Mem. at ECF p. 11; W. Va. Indictment (Dkt. 51-8) at ECF pp. 63-72.) As such, and contrary to his claims, his arrest was not merely a pretext for the interrogation. (Def. Mem. at ECF p. 14.)

Assessing the totality of the circumstances, and crediting all of Mr. Jones's factual allegations as true, the courts finds that his *Miranda* waiver and subsequent statements were made knowingly and voluntarily and should not be suppressed from evidence.

    2.    Request for an Evidentiary Hearing

        *a.*    *Applicable Law*

Where a defendant disputes the facts surrounding an alleged confession, he "is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." *Jackson v. Denno*, 378 U.S. 368, 380 (1964). A defendant is entitled to an evidentiary hearing when "he supports his motion with moving papers that are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question, including an affidavit of someone alleging personal

knowledge of the relevant facts." *Barrios*, 210 F.3d at 355. However, where the facts alleged would not compel a court to grant a motion to suppress as a matter of law, an evidentiary hearing is not required. *Gentile*, 926 F.2d at 148; *Chandler*, 164 F. Supp. 3d at 376.

Courts in this Circuit have held that bald assertions that a defendant's statements were not voluntary are insufficient to compel a hearing. *See, e.g., United States v. Perryman*, No. 12-CR-0123 (ADS), 2013 WL 4039374, at *6 (E.D.N.Y. Aug. 7, 2013). It is within the court's discretion to determine whether the facts alleged in support of a suppression motion warrant a hearing. *See United States v. Jass*, 331 F. App'x 850, 855 (2d Cir. 2009). However, a hearing is necessary in certain situations, such as when a defendant and the Government differ on whether officers gave a *Miranda* warning at all. *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998).

   b.  *Analysis*

Mr. Jones argues that he is entitled to a hearing on the basis of his affidavit, in which he claims that he signed the *Miranda* waiver and spoke with the officers only because he was "physically stressed" as a result of not being able to take his diabetes medicine, not eating or drinking, and only using the restroom once over the course of a six-hour interview. (Jones Aff. at ECF p. 16.) Mr. Jones does not allege that he told the officers he was under any kind of physical stress; his alleged request to bring his medicine with him to the station is the only instance in which his physical or medical condition was referenced. (*Id.*)

The Government's version of events differs from Mr. Jones's. There is no mention in the 302 that Mr. Jones requested to bring his medication with him to the station, or that the officers denied such a request. (*See* 302 at ECF pp. 27-30.) SA Kies stated that officers offered Mr. Jones food and coffee on several occasions, which he declined, and that he was given water and taken to the

15

bathroom several times upon request. (302 at ECF p. 27.) SA Kies also recounted details that Mr. Jones apparently provided about his narcotics trafficking in West Virginia, as well as his involvement with Black Rain. (*Id.* at 27-30.) Mr. Jones denies that he made any such statements. (Def. Mem. at ECF p. 9.)

Despite those factual discrepancies, the court declines to hold an evidentiary hearing because, even crediting Mr. Jones's version of events in full, suppression is not warranted. *Gentile*, 926 F.2d at 148 ("[I]f facts urged in support of a hearing would not entitle the moving party to relief as a matter of law, no evidentiary hearing is required."). Both the Government and Mr. Jones agree that he did not eat during the interrogation—the only dispute is whether he was offered food, which Mr. Jones does not even allege that he requested. (Def. Mem. at ECF p. 9; 302 at ECF p. 27.) Both the Government and Mr. Jones agree that he waived his *Miranda* rights orally and in writing. (Def. Mem. at ECF p. 9; Def. Reply at ECF pp. 8-9; Gov't Mem. at ECF pp. 5-6.) Neither Mr. Jones nor the Government claims that he ever sought to revoke his waiver. Neither Mr. Jones nor the Government claims that Mr. Jones made his alleged physical stress known to the officers during the interrogation. Because Mr. Jones fails to allege facts which, if proven, would compel suppression of the statements, his request for an evidentiary hearing is denied.

### B. Motion for Bill of Particulars

"A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). Where a defendant can show that the information he seeks is "necessary" to prepare his defense, a court may grant the request. *Burstein*, 2012 WL 12929661, at *4. However, a bill of particulars "is not meant to enable a defendant to obtain a preview of the government's evidence before trial or to learn the legal theory upon which the

government will proceed." *United States v. Rodriguez*, No. 18-cr-444 (NGG), 2019 WL 112621, at *6 (E.D.N.Y. Jan. 4, 2019). Further, the court "cannot compel the government to disclose, through a bill of particulars, the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence and legal theories, lest the defendant tailor his testimony to explain away the government's case." *Barret*, 2011 WL 13175738, at *6.

Mr. Jones's arguments in support of his motion for a bill of particulars are unpersuasive. The information he seeks includes the names of any uncharged coconspirators to the murder, evidence that the Government will rely on to show that he participated in the murder, and additional information regarding the allegations of narcotics trafficking—including the dates, locations, quantity, and prices of all sales charged in the conspiracy, the names of the drug purchasers and sellers, and similar information. (Def. Mem. at ECF pp. 18-19.) Mr. Jones also expresses concern about evidence produced in discovery relating to the murders of at least four individuals besides Arroyo, and he requests additional information demonstrating the relevance of these uncharged murders to the charges in the indictment. (*Id.*)

Mr. Jones has failed to make the threshold showing that the discovery he seeks is "necessary" to prepare his defense. The indictment specifies the date ranges of the alleged narcotics trafficking and murder conspiracies, the type and minimum amounts of narcotics allegedly trafficked, the date of the murder, the name of the victim, and the name of one of the alleged co-conspirators. (Indictment at ECF pp. 23-24.) The Government also provided approximately 963 pages of discovery in addition to a detention letter providing notice of its theory. (Def. Reply at ECF p. 13; Gov't Mem. at ECF p. 16.) Essentially, Mr. Jones is asking for a preview of the Government's evidence and the specific theories

that it will use to prove its case. This is precisely the type of information defendants are not entitled to obtain through a bill of particulars. As such, his motion for a bill of particulars is denied.

## IV. CONCLUSION

For the reasons stated, Defendant's motion to suppress and motion for a bill of particulars are DENIED.

SO ORDERED.


Dated:   Brooklyn, New York
         September 17, 2020

                                              /s/ Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge