UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JEROME JONES,

                              Defendant.

MEMORANDUM & ORDER
19-CR-54 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Jerome Jones is charged in a five-count superseding indictment for murder and conspiracy to murder while engaged in narcotics trafficking, in violation of 21 U.S.C. §§ 846 and 848(e)(1)(A). In this pretrial motion, Jones moves the court to direct the Government to satisfy its disclosure obligations and for dismissal of the superseding indictment for undue delay. For the following reasons, Jones's motions are DENIED.

I. BACKGROUND[1]

A. Procedural History

Jones and Darin Hamilton were indicted on January 31, 2019 for their role in the 1992 murders of Anthony Lloyd and Robert Arroyo. (*See* Indictment (Dkt. 1).) Jones is currently serving a custodial sentence for an unrelated cocaine base distribution conviction. (*See* Government Detention Letter (Dkt. 7) at 2.) Jones and Hamilton were alleged members of Black Rain, a heroine and cocaine trafficking organization that operated in the South Ozone Park neighborhood of Queens, New York. Hamilton was alleged to have murdered Lloyd, and Jones and Hamilton were

---

[1] The court assumes familiarity with the alleged facts of this case, as described in detail in its prior Order denying Jones's motions to suppress and for a bill of particulars. (*See* Sept. 17, 2020 Mem. & Order (Dkt. 62).)

1

alleged to have murdered and conspired to murder Arroyo in connection with their narcotics trafficking activity.

Trial for Jones and Hamilton was initially set for October 13, 2020. (*See* February 5, 2020 Minute Entry.) Because of pandemic related disruptions, the trial was adjourned to February 16, 2021 (*see* July 8, 2020 Text Order), and again to March 29, 2021. (*See* August 6, 2020 Order (Dkt. 60).) On January 4, 2021, the trial was adjourned *sine die* in light of questions about Hamilton's competency to stand trial. (*See* January 4, 2021 Minute Entry.) It was subsequently determined that Hamilton was not competent to stand trial, and the court granted the Government's request to dismiss the pending charges against Hamilton. (*See* June 3, 2022 Order (Dkt. 111).) Only Hamilton was charged with Count One of the indictment for the murder of Lloyd, and so Count One was dismissed along with Hamilton's dismissal from the case. (*See id.*; Indictment ¶ 1.)

Jones's trial date for murder and conspiracy to murder Arroyo was set for July 2023. (*See* May 25, 2022 Order (Dkt. 107).) In anticipation of trial, the parties submitted motions *in limine* and a joint motion for a juror questionnaire. (*See* Jones Mot in limine (Dkt. 118); Gov. Mot. in limine (Dkt. 119); Mot. for Jury Questionnaire (Dkt. 128).) In its motion *in limine*, the Government argued that evidence of Black Rain's drug-related murders of Lloyd, Oscar Flow, and Dorothy Taylor should be admissible as direct evidence of crimes charged, or, in the alternative as permissible evidence of "other crimes, wrongs, or acts" under Federal Rule of Evidence 404(b). (Gov. Mot. in limine at 1.) Jones opposed the admission of evidence of the other drug-related murders. (*See generally* Jones Opp. to Gov. Mot. (Dkt. 121).)

On June 8, 2023, a federal grand jury returned a superseding indictment charging Jones with the murders of Flow, Taylor, and Arroyo. (*See* Superseding Indictment (Dkt. 130) ¶¶ 1, 3, 5.) The

2

trial set for July 2023 was postponed to September 15, 2024, and a briefing schedule for pretrial motions was set. (*See* June 12, 2023 Minute Entry; August 15, 2023 Minute Entry.) Jones's fully briefed motion to dismiss followed. (*See* Mot. to Dismiss ("Mot.") (Dkt. 144-1); Gov't Opp. to Mot. ("Gov't Opp.") (Dkt. 145); Reply (Dkt. 146).)

### B. Defendant's Motion

Jones moves to dismiss the superseding indictment under Federal Rule of Criminal Procedure 12(b)(3)(A)(ii) as a violation of his due process rights because of undue pre-indictment delay. He argues that the Government's delay in bringing the superseding indictment, from 2019 to 2023, violated his due process rights. He also asks the court to direct the Government to disclose discovery related to its *Brady* and *Giglio* obligations, the Jencks Act, and Rule 404(b) evidence, including a list of witnesses and witness statements about the charged offenses. (*See* Mot. at 5-6.)

## II. DISCUSSION

### A. Pre-indictment delay

Jones argues that the Government has had the information that formed the basis for Jones's initial indictment since 1993 and for the superseding indictment since 2019, and it declined to bring charges to gain a tactical advantage over Jones. (*See* Mot. at 7.) In his reply, Jones clarifies that the undue delay in question is only the Government's decision to not issue the superseding indictment until 2023 when it had all the relevant information in 2019. (*See* Reply at 4-5.)

Indictments filed within the statute of limitations are presumptively valid. *See United States v. Marion*, 404 U.S. 307, 322 (1971). To show that a pre-indictment delay violated a defendant's due process rights, the defendant must show that the delay "cause[d] substantial prejudice to the defendant's ability to present his defense and [that] the delay was an intentional device

to gain a tactical advantage over the accused." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999).[2] Prejudice in the context of pre-indictment delay means a "deprivation that impairs a defendant's right to a fair trial" such as the loss of documentary evidence or the unavailability of a key witness. *Id.* (citing *United States v. Lovasco*, 431 U.S. 783, 796 (1977) and *United States v. Elsbery*, 602 F.2d 1054, 1059 (2d Cir. 1979)). The government's use of a delay for a tactical advantage includes "reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges." *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 563 (1983).

To support the showing of prejudice, Jones argues that he was deprived of the "opportunity to employ traditional investigative techniques" and that he can no longer meaningfully confer with Hamilton, who was deemed unfit to stand trial. (Mot. at 7-8.)[3] And Jones contends that the timing of the superseding indictment—filed after Jones raised a "powerful defense" in response to the Government's motion *in limine* to introduce evidence of the murders of Flow and Taylor—is indicative of an unfair tactical advantage that unduly prejudices Jones. (Mot. at 10-11.) These arguments do not satisfy the "heavy burden" that defendants bear to demonstrate that a pre-indictment delay violated due process. *United States v. Rivera*, No. 15-CR-722 (PAE), 2022 WL 17090867, at *3 (S.D.N.Y. Nov. 21, 2022).

---

[2] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

[3] Jones also argues that the undue delay was compounded by the Government's late *Brady* disclosures. (*Id.* at 7.) As discussed below, the Government is obligated to disclose *Brady* materials only with enough time for its effective use at trial. *Brady* disclosures are not required five months before a trial, so the Government's *Brady* disclosures are not late and cannot be the basis for dismissing the indictment.

Jones is unable to demonstrate prejudice from the delay. Regarding traditional investigative techniques, the deprivation of the opportunity to seek telephone records or canvass the area where the murders occurred, contrary to Jones's claim, did not result from the four-year delay in filing the superseding indictment. (*See* Mot. at 7; Reply at 4-5.) Any opportunity to use these "traditional investigative techniques" was likely already lost in 2019, as nearly thirty years had passed since the alleged murders occurred. And even so, Jones does not point to any specific evidence that these investigative techniques would have uncovered that Jones can no longer submit to the jury as a result of the delay. *See United States v. Jordan*, 629 F. Supp. 3d 49, 55 (E.D.N.Y. 2022) (requiring details of lost exculpatory evidence to show prejudice). Jones is similarly unable to show prejudice based on his inability to confer with Hamilton, his once-codefendant. Even if Jones and Hamilton showed a willingness to confer with each other as codefendants in the past, (*see* Reply at 4), Jones points to no specific exculpatory evidence that Jones lost as a result of the delay.

Jones is also unable to show that the Government's delay was an intentional or reckless device to gain an advantage. To support his argument that the delay was tactical, Jones argues that the Government only filed the superseding indictment after motions *in limine* had been fully briefed, and the new charges would render moot Jones's arguments that evidence of the Flow and Taylor murders should be excluded. (*See* Mot. at 10-11.) The Government explained that the delay in filing the superseding indictment was a result of trial preparation in which the Government amassed proof related to the murders of Flow and Taylor that eventually supported charging Jones with those crimes. (Gov't Opp. at 2, 7.) A prosecutor that does not seek an indictment until "he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable

doubt" does not violate a defendant's due process rights. *United States v. Lovasco*, 431 U.S. 783, 795 (1977).

For a pre-indictment delay to violate due process, the prosecutor must have or should have known that the delay would harm the defendant's ability to defend himself. In *United States v. Santiago*, the court found that the pre-indictment delay in bringing charges for a soldier's conduct during the Iraq War was reckless in light of the prosecutor's knowledge that the United States was withdrawing troops from Iraq and the defendant's exculpatory witness was an Iraqi interpreter who was no longer accessible. 987 F. Supp. 2d 465, 492-93 (S.D.N.Y. 2013). Though no malice was found, the Government took a series of deliberate decisions that delayed the indictment without regard for the predictable consequences that such a delay would have on the defendant's ability to access his sole exculpatory witness. *Id.*

Jones's case is distinct. Jones was initially set to go to trial on the initial indictment in October 2020, but the trial was delayed because of the pandemic and because of concerns regarding Hamilton's competency to stand trial. The Government could not have foreseen nor recklessly disregarded these delays when it decided to not bring charges in 2019, and it is not apparent from the record that the Government took any deliberate decisions that resulted in the delay. Instead, it continued its investigation and, perhaps as a result of extrinsic delays stemming from the pandemic, filed additional murder charges against Jones. Absent a showing of deliberate or reckless conduct on the part of the Government to delay Jones's trial, Jones is unable to show that the Government's delay violated his due process rights.

### B. Disclosures

Jones separately requests that the Government provide (1) disclosure of all information which must be disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*,

405 U.S. 150 (1972) and their progeny, as well as witness statements pursuant to 18 U.S.C. § 3500; (2) documents, records, and interviews from all law enforcement and prosecutor offices relating to statements about the charged offenses; (3) reasonable notice in advance of trial of any evidence of other crimes, wrongs, or acts it intends to introduce at trial under Fed. R. Evid. 404(b); and (4) the identity and contact information for Government witnesses. (*See* Mot. at 5-6, 12; *see also* Jones Mot. in Limine at 9.) In response, the Government states that it "has repeatedly and emphatically acknowledged its *Brady* obligations in this case and affirmed its intention to comply with them." (Gov't Opp. at 11.) The only timing requirement for *Brady* disclosures is that the material "must be disclosed in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001). Accordingly, "[t]he courts of this Circuit repeatedly have denied pretrial requests for discovery orders pursuant to *Brady* where the Government has made ... good faith representations" that it recognizes its disclosure obligations and will comply with them in a timely manner. *United States v. Shkreli*, No. 15-CR-637 (KAM), 2016 WL 8711065, at *2 (E.D.N.Y. Dec. 16, 2016) (collecting cases). "Until proven otherwise, we accept the Government's unequivocal representations that it has complied with (and will continue to comply with) its disclosure obligations[.]" *United States v. Sterling*, No. 17-CR-490 (NRB), 2019 WL 2006393, at *2 (S.D.N.Y. May 6, 2019). In light of the Government's representation that it will continue to comply with its *Brady* obligations and its disclosure of potentially relevant materials, (*see, e.g.*, Gov. Letter dated Sept. 18, 2023), the court is left with no indication that a pretrial order to compel the Government to disclose *Brady* materials is necessary.

With respect to *Giglio* and section 3500 material in particular, including Jones's request for witness statements to law enforcement, the law provides that there is no right to such material until the witness has testified on direct examination. 18 U.S.C. §

7

3500(a). Until such time, requests for immediate disclosure have no basis in the law. *Coppa*, 267 F.3d at 146 ("[A] District Court's power to order pretrial disclosure is constrained by the Jencks Act, and, therefore, we hold that the District Court exceeded its authority in issuing the [disclosure order]."). Regarding the disclosure of 404(b) evidence, "courts in the Second Circuit routinely find that two weeks' notice is 'reasonable' for purposes of Rule 404(b) disclosures." *United States v. Inniss*, No. 18-CR-134 (KAM), 2019 WL 6117987, at *3 (E.D.N.Y. Nov. 18, 2019) (collecting cases).

Because Jones has not raised any reason to believe the Government's representations regarding its disclosure obligations are not made in good faith, these motions are premature. If specific instances of failures to disclose material as required by law arise, Jones may reraise these arguments at that time. Accordingly, Jones's motion to compel discovery is DENIED.

As part of his disclosure request, Jones seeks the identity and contact information of the Government's witnesses. The discretion of the court "to compel the Government to identify its witnesses is acknowledged widely" upon a finding of materiality and reasonableness. *United States v. Coffey*, 361 F. Supp. 2d 102, 125 (E.D.N.Y. 2005) (collecting cases); *United States v. Cannone*, 528 F.2d 296, 301 (2d Cir. 1975). In determining whether compelling disclosure of the Government's witness list is appropriate, courts balance the risk that doing so will lead to witness tampering or intimidation with the necessity of providing the defense with adequate opportunity to prepare its case. *See United States v. Falkowitz*, 214 F. Supp. 2d 365, 394-95. (S.D.N.Y. 2002). Jones was charged with three murders as part of a narcotics trafficking operation, cautioning against advanced disclosure. But over thirty years have passed and Jones is currently incarcerated, reducing the risk of witness tampering and increasing the complexity of the case. However, because the trial is five months

away, disclosure of the government witness list is not appropriate at this time. *See Coffey*, 361 F. Supp. 2d at 126 (denying motion for witness list when trial was more than two months away); *Falkowitz*, 214 F. Supp. 2d at 395 (ordering Government to produce witness list no less than thirty days before trial); *United States v. Solomonyan*, 451 F. Supp. 2d 626, 645-46 (S.D.N.Y. 2006) (denying motion to produce witness list thirty days before trial because of risks to witnesses); *United States v. Barrett*, 153 F. Supp. 3d 552, 576 (E.D.N.Y. 2015) (ordering production of proposed witness list 45 days before trial). The Government is DIRECTED to produce the witness list to Jones no less than thirty days before trial is set to begin, unless the Government can demonstrate by clear and convincing evidence that such a disclosure may endanger any of the potential witnesses or increase the likelihood that a witness will not appear at trial, or that doing so would otherwise be prejudicial to the Government's ability to prosecute its case.[4]

---

[4] If the Government believes that disclosure would pose a risk to its planned witnesses, it may make an *ex parte* application to the court.

## III. CONCLUSION

For the foregoing reasons, Jones's motion to dismiss is DENIED. The Government is DIRECTED to produce the identities and contact information for its witnesses thirty days before trial, unless it makes a showing that doing so would be prejudicial to the prosecution of the Government's case. Jones's remaining motions to compel are otherwise DENIED as premature. The parties are DIRECTED to confer and set a schedule for remaining disclosures in advance of trial. If the parties are unable to do so, Jones may renew his motion for disclosure closer to trial.

SO ORDERED.

Dated: Brooklyn, New York
April 19, 2024

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge
