UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
UNITED STATES OF AMERICA,

-against-

JEROME JONES,

Defendant.

**MEMORANDUM & ORDER
19-CR-54 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court are Defendant Jerome Jones's First Motion *in Limine*, (Jones Mot. (Dkt. 118)), and the Government's First Motion *in Limine*. (Gov't Mot. (Dkt. 119).) For the reasons that follow, Jones's Motion is GRANTED in part and DENIED in part, and the Government's Motion is GRANTED in part and DENIED in part.

## I.  BACKGROUND

The court presumes the parties' familiarity with the underlying facts and procedural history of the case. In brief, on January 31, 2019, Jones was indicted along with a co-defendant, Darin Hamilton.[1] (Indictment (Dkt. 1).) Jones was charged with two counts: Count Two, Conspiracy to Murder Robert Arroyo While Engaged in Narcotics Trafficking, in violation of 21 U.S.C. §§ 848(e)(1)(A) and 846, and Count Three, Murder of Robert Arroyo While Engaged in Narcotics Trafficking, in violation of 21 U.S.C. § 848(e)(1)(A). (*Id.* at 2-3.) Jones is alleged to have recruited two men to murder Robert Arroyo on September 8, 1992, while a member of a drug trafficking organization called "Black

---

[1] The charges against Hamilton were ultimately dismissed. (*See* June 3, 2020 Order (Dkt. 111).)

Rain," because of Black Rain's belief Arroyo was acting as a government informant. (*See* Sept. 17, 2020 Mem. & Order ("M&O") (Dkt. 62) at 1-2.)

On May 29, 2020, Jones moved to suppress evidence and for a bill of particulars. (May 29, 2020 Mot. (Dkt. 51).) These motions were denied on September 17, 2020. (Sept. 17, 2020 M&O at 2.)

On April 7, 2023, Jones and the Government each filed the motions *in limine* currently before the court. (*See* Gov't Mot.; Jones Mot.) The motions were fully briefed on May 19, 2023. (*See* Gov't Opp. to Jones Mot. (Dkt. 120); Jones Opp. to Gov't Mot. (Dkt. 121); Gov't Reply (Dkt. 124); Jones Reply (Dkt. 125).)

On June 8, 2023, the Government filed a superseding indictment charging Jones with three additional counts: Count One, Murder of Oscar Flow While Engaged in Narcotics Trafficking, in violation of 21 U.S.C. § 848(e)(1)(A), Count Four, Conspiracy to Murder Dorothy Taylor While Engaged in Narcotics Trafficking, in violation of 21 U.S.C. §§ 848(e)(1)(A) and 846, and Count Five, Murder of Dorothy Taylor While Engaged in Narcotics Trafficking, in violation of 21 U.S.C. § 848(e)(1)(A). (Superseding Indictment (Dkt. 130) at 1, 3-4.) On November 6, 2023, Jones moved to dismiss the superseding indictment for undue delay. (Mot. to Dismiss (Dkt. 144).) This motion was denied on April 19, 2024. (*See* April 19, 2024 M&O (Dkt. 150) at 1.)

On May 3, 2024, the Defendant filed a letter after conferring with the Government clarifying the remaining motions *in limine* for the court. (Def. Letter dated May 2, 2024 (Dkt. 154).) Jury selection is set for September 9, 2024. (Min. Entry dated April 30, 2024.)

## II.  LEGAL STANDARD

"The purpose of an *in limine* motion is to aid the trial process by enabling the [c]ourt to rule in advance of trial on the relevance

2

of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).[2] "A court will exclude evidence on a motion *in limine* only if it is clearly inadmissible on all potential grounds." *Laureano v. City of New York*, No. 17-CV-181 (LAP), 2021 WL 3272002, at *1 (S.D.N.Y. July 30, 2021). The Federal Rules of Evidence govern the admissibility of evidence at trial.

"[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context." *Ohio Cas. Ins. Co. v. Twin City Fire Ins. Co.*, No. 14-CV-858 (NGG) (PK), 2019 WL 1365752, at *2 (E.D.N.Y. Mar. 26, 2019). At trial, the court may also exercise discretion "to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## III. DISCUSSION

### A. Evidence of Other Murders

The Government first seeks to introduce evidence of several other murders and an attempted murder that were not included in the initial Indictment. (*See* Gov't Mot. at 7.) These murders were allegedly committed by members of Black Rain, in service of the gang, at Jones's direction. (*See id.*)[3] This initially included evidence of the murders of Oscar Flow and Dorothy Taylor, (*id.* at 4-6), for which Jones is now charged in Counts One, Four, and Five in the Superseding Indictment. (Superseding Indictment at 1, 3-4; *see also* Letter dated May 2, 2024 (noting the motions *in limine* that remain outstanding).) Evidence presented relating to

---

[2] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

[3] To avoid repetition of the word "allegedly," the court notes that all the facts recited herein are allegations made by the Government, on the basis of purported evidence the court has not received or reviewed.

Jones's role in the Flow and Taylor murders is now direct evidence of the charged crime and is admissible. The court's discussion therefore focuses on evidence relating to the murder of Lloyd and the conspiracy to murder Jazz.

On June 24, 1992, co-Defendant Hamilton shot and killed a man named Anthony Lloyd. (Gov't Mot. at 5.) Lloyd had previously robbed Black Rain on multiple occasions, including one drug dealer at gun point; that dealer informed Jones and Hamilton, and Hamilton stated they would "handle it." (*Id.*) Hamilton was arrested for Lloyd's murder, and others, on December 1, 1992, and was ultimately acquitted in April 1997. (*Id.*)

In late 1992, Jones and CW-1 conspired to kill an individual known as "Jazz," a rival drug dealer operating in Black Rain's territory. (*Id.* at 6-7.) Jones, CW-1, and other Black Rain members drove to Jazz's home and made a plan to kill Jazz following a party, when they believed Jazz would have $100,000 in cash on him. (*Id.*) Ultimately, other members of Black Rain expected to participate in the murder were arrested and incarcerated, and CW-1 decided not to carry out the murder. (*Id.*)

Jones argues that the Government should be precluded from introducing evidence of these uncharged murders and an initial attempt to murder Arroyo, in which Black Rain members mistakenly shot another man. (Jones Mot. at 2-4; Jones Opp. to Gov't Mot. at 3-7.)

The Government argues that this evidence is "crucial to prove the relation between the narcotics conspiracy and the intentional killing of Robert Arroyo, as well as necessary to complete the story of the crime charged." (Gov't Mot. at 7.) They further argue that the evidence is admissible "to explain the relationship of trust between the defendant and other members of Black Rain, including CW-1." (*Id.*) Jones argues that these events are not direct evidence of charged conduct, nor are they "inextricably

intertwined with the charged conduct." (Jones Opp. to Gov't Mot. at 4.)

"[E]vidence of uncharged criminal activity is not considered 'other crimes' evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989). "When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994). "An act that is alleged to have been done in furtherance of the alleged conspiracy, however, is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged." *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992).

The accidental shooting of an unnamed other victim, when intending to target Arroyo, is not other crimes evidence, and therefore does not fall within the ambit of Rule 404(b). As a matter of logic, an earlier failed attempt to commit the charged crime "arose out of the same transaction or series of transactions" and is direct evidence of actions taken to further the charged murder conspiracy. *Towne*, 870 F.2d at 886.

The murder of Lloyd and conspiracy to murder Jazz present a more complex question. These other events—while similar in motive and execution to the charged conduct—are not direct evidence of the charged conduct. Situations in which courts have found that other acts are "inextricably intertwined" illustrate the difference: in *United States v. Carboni*, the defendant was charged with banking fraud, and the contested other act involved altering how inventory was calculated. 204 F.3d 39, 44 (2d Cir. 2000). This other act was "inextricably intertwined" with the underlying

fraud because it was intended to "create an overly optimistic picture of [the company's] financial system and thus keep the money flowing from [the victim.]" *Id.* In *United States v. Gonzalez*, the defendants were charged as felons in possession of a weapon, and the court found that evidence of a previous burglary attempt was inextricably intertwined with the charged conduct because it "provide[d] crucial background evidence that gave coherence to the basic sequence of events that occurred." 110 F.3d 936, 942 (2d Cir. 1997).

The similarity in motive, methods, and personnel between the charged murders and uncharged murders in this case does not make the uncharged murder and murder conspiracy "inextricably intertwined" with the charged counts. Though other crimes are not admissible to prove character or propensity, they can be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). This is the purpose for which the Government offers the evidence of Lloyd's murder—they seek to show the existence of the Black Rain gang, Jones's senior role therein, and the development of trust between Jones, Hamilton, and CW-1 that was built over the course of several violent incidents and presumably provided comfort in the execution of the charged murders. That the prior act was similar in motive, intent, and performance to the charged murders deepens its probative value for these purposes. *See United States v. Mercado*, 573 F.3d 138, 141-42 (2d Cir. 2009) (admitting evidence of prior crimes "where the prior dealings between two conspirators show the basis for trust between the co-conspirators" because the prior acts "established the history of the conspiracy, trust between the parties, intent, and knowledge.").

Nonetheless, even if the other crimes evidence is permitted under Rule 404, there remains significant risk of undue prejudice under Rule 403. *See United States v. Inserra*, 34 F.3d 83, 89 (2d Cir.

1994) ("We follow an inclusionary rule, allowing the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence."). Other crimes evidence is prejudicial if it "involve[d] conduct more inflammatory than the charged crime[.]" *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). That is not the case here—the uncharged murder and murder conspiracy are not more inflammatory than the three murders for which Jones is charged.

Nevertheless, there are few crimes with more potential to enflame the jury's emotions than murder, and the court agrees "[t]he sheer number of additional incidents that the [G]overnment seeks to introduce" heightens the prejudicial effect of such evidence. (Jones Opp. to Gov't Mot. at 5.) This risk is particularly true for the conspiracy to murder Jazz, which may have occurred after the charged homicides. (*Id.* at 14; *see also* Gov't Mot. at 6 (noting that the Jazz murder conspiracy occurred in "late 1992" while the Taylor murder occurred in November 1992).) The probative value of a later incident to the methods, motives, and existence of Black Rain is lessened, while the prejudice compounds from each additional uncharged crime introduced into evidence. Because the Government will be able to present substantial probative evidence of Black Rain's use of violence to protect its narcotics trafficking enterprise through the three charged murders and the uncharged Lloyd murder, there is a risk that inclusion of the Jazz murder conspiracy is unfairly prejudicial and cumulative.

Accordingly, Jones's motion to exclude evidence of the mistaken victim of the attempted murder of Arroyo and of the murder of Lloyd are DENIED, and the Government's motion to present such evidence is GRANTED. The court DEFERS JUDGMENT on the admission of evidence of the Jazz murder conspiracy until trial

to allow for a more complete record to determine potential prejudice. Jones's motions to exclude evidence of the Taylor and Flow murders are DENIED.

### B.  References to Underage Girls

In its motion, the Government references as background that evidence shows Jones "employed underage girls to sell narcotics" and "was involved in a sexual relationship with one such underage female employee during the time period of the charged conspiracy." (Gov't Mot. at 3.) The Government does not indicate whether they plan to introduce such evidence at trial, but for the avoidance of doubt, Jones opposes its use as "not probative and unfairly prejudicial." (Jones Opp. to Gov't Mot. at 18; *see also* Letter dated May 2, 2024 (noting that this motion remains outstanding following the Superseding Indictment).)

The court agrees. The presence of, and any relationship Jones may have had with, an underaged girl is entirely irrelevant to the charged murders and has minimal probative value to the structure or function of Black Rain as a narcotics conspiracy. At most, it is window dressing, but it carries the risk of being highly prejudicial. Accordingly, Jones's motion to preclude the presentation of such evidence is GRANTED.

### C.  Evidence of Jones's Prior Convictions

The Government seeks to introduce at trial evidence of two of Jones's prior convictions, for criminal possession of narcotics in the fourth degree and attempted criminal possession of a weapon in the second degree. (Gov't Mot. at 22.) Both arrests took place in 1984. (*Id.*) The Government argues that these convictions would be admissible under Rule 404(b) for three reasons: (1) to rebut any argument that Jones lacked the requisite knowledge or intent to participate in the charged conspiracy to distribute narcotics; (2) to corroborate Jones's prior statement to law enforcement (discussed further *infra*) that he entered the drug

trade in his teenage years; and (3) to corroborate and provide context to expected witness testimony regarding Jones's senior role in Black Rain. (*Id.* at 22-25.) In response, Jones argues that this evidence would be unduly prejudicial. (Jones Opp. to Gov't Mot. at 17-18.)

Evidence of prior crimes is inadmissible to show a person's character or that on a specific occasion the person acted in accordance with that character, but it is admissible for other purposes, including intent and knowledge. *Mercado,* 573 F.3d at 141 (citing Fed. R. Evid. 404(b)). It is necessary that the prior act be "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [or intent] inference advocated by the proponent of the evidence." *United States v. Peterson,* 808 F.2d 969, 974 (2d Cir. 1987). "Similarity . . . is judged by the degree in which the prior act approaches near identity with the elements of the offense charged." *United States v. Aminy,* 15 F.3d 258, 260 (2d Cir. 1994).

When a defendant puts his state of mind to commit the charged crime at issue, "prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged." *United States v. Zackson,* 12 F.3d 1178, 1182 (2d Cir. 1993). If "the nature of [the] defense [is] apparent from the outset of trial," the court may allow the evidence in the prosecution's case in chief. *Id.* at 1183.

The Government, as of yet, provides no support for its claim that it is apparent that Jones will put his intent or knowledge of the conspiracy at issue. Further, although Jones's prior conviction for possession of narcotics *may* be probative of his state of mind regarding a conspiracy to distribute, the court lacks sufficient facts regarding that conviction to determine whether there is sufficient similarity between the conduct underlying that conviction and

the conduct alleged here.[4] While a conspiracy to distribute narcotics likely involves conduct which could also give rise to a charge for possession, the reverse is not true—distribution and possession are distinct crimes, involving potentially quite divergent conduct. Without more, the court cannot conclude that Jones's prior conviction—potentially for simple possession of the requisite amount of a listed drug—sheds any light on his role in the charged conspiracy to distribute, even assuming the Government had shown Jones will put intent at issue. If, following opening statements or the presentation of Jones's case at trial, Jones has put at issue his state of mind, the Government may renew its argument and provide evidence illustrating the probative value of the earlier conviction.

Evidence of other crimes may also be used to corroborate "crucial prosecution testimony" where "the corroboration is direct and the matter corroborated is significant." *United States v. Everett*, 825 F.2d 658, 660 (2d Cir. 1987). "'Significant' evidence is usually understood to mean important—as distinct from trivial—evidence in a trial." *Id.* "'Direct' corroborating evidence is evidence that is not wholly disconnected, remote, or collateral to the matter corroborated." *Id.* The Government argues that Jones's prior convictions will be used to corroborate his own 2017 statements to law enforcement, which included a claim that he began selling drugs at 14 years old, a statement he was a "shooter" and a "gunslinger," and a comment that he "was incarcerated on drug and gun charges." (Gov't Mot. at 24.) It will also corroborate witness testimony that Jones was a "lieutenant" and high-ranking member of Black Rain, by showing that he was

---

[4] It is unclear whether the Government seeks to introduce evidence of the conviction for attempted possession of a firearm on this theory. (*See* Gov't Mot. at 22-23.) For the avoidance of doubt, any such argument is rejected, as attempted possession of a firearm is not probative of Jones's state of mind regarding the charged conspiracy to distribute narcotics.

given greater responsibility because of his lengthy experience in the drug trade. (*Id.*)

The court is unpersuaded that the evidence of Jones's prior convictions is sufficiently "significant" to be admissible under Rule 404(b). Although the Government indicates it plans to make Jones's prior statements to law enforcement a significant part of its proof at trial, including his admission "to elements of the charged crimes and knowledge of the Arroyo, Flow, Lloyd and Taylor murders," (*Id.* at 24), the specific portions of that statement it seeks to corroborate are far less consequential. The age at which Jones allegedly began selling drugs and his comments regarding his use of guns may be relevant to the charges and Jones's state of mind, but these alleged facts are not important, direct evidence of the conspiracy and murder charges at issue. And the Government's goal of enhancing the credibility of *other* portions of Jones's statement is an indirect purpose, which is insufficient for introducing prior convictions as corroborating testimony. Further, for the same reasons stated above, it is unclear that Jones's prior convictions for possession of narcotics and attempted possession of a firearm are probative of his history or role in the drug trade, and therefore would also fail to corroborate witness testimony regarding Jones's role in Black Rain.

As above, if Jones opens the door at trial by calling into question the credibility of (1) his specific prior statements, such as the age at which he entered the drug trade, or (2) testimony regarding his role in Black Rain, the Government may renew its motion to introduce evidence of Jones's prior convictions, provided the Government demonstrates why these convictions corroborate such testimony. Accordingly, Jones's motion to bar evidence of his prior convictions is GRANTED with leave to renew in accordance with the terms of this Order.

### D.   CW-1's Prior Consistent Statements

The Government seeks to introduce prior consistent statements that CW-1 made while in police custody in 1993, in the event Jones suggests CW-1 "has recently fabricated his testimony, is acting from an improper influence or motive in so testifying, or is not credible[.]" (Gov't Mot. at 26-27.) The Government notes that such prior statements are not hearsay where the declarant testifies and is subject to cross-examination, the prior statement is consistent with the in-court testimony, and the statement rebuts a claim of recent fabrication, improper influence, or improper motive or otherwise responds to arguments of lack of credibility. *Id.* at 25-26 (citing Fed. R. Evid. 801(d)(1)(B)).)

Jones does not contest the Government's summary of the applicable law but argues that it is impossible to judge whether the prior statement was made before the declarant developed the alleged motive to fabricate. (Jones Opp. to Gov't Motion at 18 (citing *Tome v. United States*, 513 U.S. 150, 158 (1995)).) The court agrees. At this stage, there is no record from which to determine what testimony CW-1 may provide; how the prior statement may corroborate that testimony; what alleged motive to fabricate CW-1 may have; or when that motive to fabricate arose. Accordingly, the court DEFERS JUDGMENT on this issue until trial, when the issue may be more completely presented in context.

### E.   Jones's Statements to Law Enforcement

Next, the Government seeks to introduce—and Jones seeks to preclude—statements that Jones made to law enforcement officers following his unrelated arrest in November 2017. (Gov't Mot. at 27-33; Jones Mot. at 4-5.) The Government also seeks to preclude Jones from introducing other portions of those statements which are purportedly "self-serving." (Gov't Mot. at 33.) The Government helpfully categorizes the statements they expect to introduce into five groups: (1) Jones's role in Black Rain; (2)

Jones's reputation, including his statements that he was a "shooter" and "gunslinger" while a member of Black Rain; (3) his knowledge of violence committed by Black Rain, including the murders of Arroyo, Flow, Lloyd, and Taylor; (4) consequences that Black Rain imposed on people for stealing from the group; and (5) Jones's 2017 narcotics distribution activities which led to his arrest. (*Id.* at 32.)

Jones does not contest that these statements, as "statement[s] of the opposing party," are not hearsay pursuant to Federal Rule of Evidence 801(d)(2)(A). (*See* Jones Opp. to Gov't Mot. at 19.) *See also United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). Jones argues that, although the statements are not hearsay, they remain not relevant pursuant to Rules 401 and 402 or, even if relevant, the probative value is outweighed by the undue prejudice of the statements and therefore is inadmissible pursuant to Rule 403. (Jones Mot. at 5; Jones Opp. to Gov't Mot. at 19-20.) If such statements are nonetheless admitted, Jones argues that the court should allow introduction of other portions for the sake of completeness. (Jones Opp. to Gov't Mot. at 19-22.)

Though the Government does not provide specific statements whose relevance and admissibility are in dispute, the issues raised by Jones overlap with others discussed herein and the summaries provided are sufficient for the court to provide general guidance. As discussed further *infra*, conspiracy to distribute narcotics is an element of a crime of which Jones stands accused, and therefore his membership and role in Black Rain are relevant direct evidence, as are his relationships with other Black Rain leaders, both before and after the alleged crimes. Similarly, his reputation as a member of the gang and Black Rain's willingness to retaliate against thieves—which implicate Jones's alleged motive and intent to commit murder—are relevant and not unfairly

prejudicial.[5] And because the court concluded above that evidence regarding an uncharged murder was admissible, that conclusion includes Jones's 2017 statements to law enforcement regarding such murder. Thus, Jones's 2017 statements about Black Rain's trafficking activities, its use of violence, and his role within the organization are admissible. (*See* Gov't Mot. at 32.)

The final category of statements are those related to Jones's drug distribution activities underlying the 2017 arrest. In addition to general concerns of relevance and prejudice, these statements also raise issues regarding uncharged criminal activity under Rule 404(b). Unlike the prior convictions discussed above, these activities post-date the conduct at issue herein by a matter of decades, and therefore are irrelevant to questions of Jones's knowledge and intent in 1992. The details of specific statements may raise undue prejudice that outweighs the probative value of such evidence. The Government references Jones's statements "about his narcotics trafficking in Virginia and West Virginia, including information about his suppliers and certain co-conspirators." (*Id.* at 28.) These details regarding Jones's alleged 2017 criminal activity provide no additional probative value beyond the fact of his arrest and raise significant risk of an improper propensity inference. Accordingly, Jones's statements to law enforcement regarding the specifics of the crimes that led to his 2017 arrest are inadmissible.

---

[5] Jones argues that the statements regarding being a "shooter" and "gunslinger" referenced his activities and reputation in the 1980s, years before the murder charged in this case. (Jones Opp. to Gov't Mot. at 20.) It is unclear to the court whether the statements reference Jones's reputation as a member of Black Rain generally, a membership which is alleged to have continued through the dates of the charged conduct, or if they are specific to an earlier timeframe. Accordingly, if the Government's presentation of the evidence at trial illustrates the lack of temporal proximity to the events in question, Jones is free to renew any objection regarding the relevance of these comments.

Next, the Government argues that while it plans to introduce portions of Jones's statements in November 2017, Jones should be barred from introducing other portions of the statement. As out-of-court statements offered for their truth, Jones's statements are indeed hearsay; the exclusion to the definition of hearsay on which the Government relies, for statements made by the opposing party, does not allow Jones to introduce his own prior statements. *See* Fed. R. Evid. 801(c) (definition of hearsay); Fed. R. Evid. 801(d)(2) (opposing party statement exclusion); *see also Marin*, 669 F.2d at 84 ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").

However, under the completeness doctrine, even where the statements are properly considered hearsay, it may still be necessary to allow them into evidence "if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007); *see also* Fed. R. Evid. 106 ("If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection."). "The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999).

The pivotal question is therefore whether the excluded portions of the statement are "explanatory of [or] relevant to" the portions the Government seeks to introduce as evidence. *See id.* at 73 (holding that it was not an abuse of discretion to admit a 90-second portion of a 42-minute long tape in which the defendant

was warned that he was committing a federal crime while excluding later portions of the tape that purportedly discredit the warning); *Johnson*, 507 F.3d at 796 (differentiating between admitted portion discussing plans and excluded portions discussing execution of plan). Here, the Government will be permitted to introduce Jones's November 2017 statements to show Jones's "knowledge that members of the crew were involved in violence and murders on behalf of Black Rain." (Gov't Mot. at 33.) The specific statement for which a dispute is currently presented to the court is "Jones's statement[] that he did not murder anyone or order the murder of anyone[.]" (Jones Opp. to Gov't Mot. at 22.) This denial of involvement in the murders therefore is crucial context for Jones's statement concerning the murders; otherwise, Jones's statements may implicitly be construed or understood as a confession. Any question as to the credibility of Jones's denial is for the jury and does not go to admissibility. Accordingly, Jones will be allowed to introduce such denials as necessary for context and accurate understanding of the admitted discussion of the murders.

Specific other "self-serving" statements have not been identified by either the Government or Jones. Accordingly, those statements' relevance and necessity cannot be assessed at this time.

For these reasons, the Government's motion to introduce Jones's prior statement concerning Black Rain and his role in the organization is GRANTED and Jones's motion to preclude such statements is DENIED. The Government's motion to present the specifics of the 2017 narcotics trafficking activities is DENIED and Jones's motion to preclude such statements is GRANTED. The Government's motion to preclude Jones from introducing portions of that statement as necessary to provide context and avoid misleading the jury is DENIED.

### F.   Evidence of Jones's Gang Membership

Jones seeks to preclude evidence of his alleged gang member-ship, including his nickname "Sha." (Jones Mot. at 5.) He argues that the evidence has minimal probative value, which is out-weighed by the prejudice of a "guilt by association" argument and should therefore be precluded pursuant to Rule 403. (*Id.* at 5-6.) He further argues that membership in a gang is propensity evidence barred by Rule 404(b). (*Id.*) In response, the Govern-ment points out that Jones's membership in the Black Rain gang is an element of the charged crime of murder while engaged in a conspiracy to distribute heroin and cocaine. (Gov't Opp. to Jones Mot. at 2.) The Government also notes that "there are trial wit-nesses that know the defendant as 'Sha,' rather than Jerome." (*Id.*)

Rule 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Rule 404(b) states that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b).

Jones relies on a series of cases pointing out the seriously preju-dicial nature of gang affiliations. *See United States v. Nelson,* 103 F. Supp. 2d 512, 513-14 (N.D.N.Y. 1999); *United States v. Elkins,* 70 F.3d 81, 83-85 (10th Cir. 1995); *United States v. Roark,* 924 F.2d 1426, 1432-34 (8th Cir. 1991). Though gang affiliation can be prejudicial and "more inflammatory than the charged crime," *United States v. Jackson,* No. 19-CR-356 (ARR), 2021 WL 62109, at *2 (E.D.N.Y. Jan. 7, 2021), unfair prejudice is only one half of the test under Rule 403. While Jones asserts that there is no pro-bative value to his gang affiliations, that is belied by the conspiracy charge at issue in this case. The Government must prove beyond a reasonable doubt that Jones was engaged in a

conspiracy to distribute narcotics, which they expect to do via "[p]roof of the Black Rain organization and the defendant's membership and participation therein[.]" (Gov't Opp. to Jones Mot. at 2.) Such "direct evidence of the existence and nature of the enterprise. . . has significant probative value to prove the existence of the alleged conspiracy[.]" *United States v. Smothers*, 652 F. Supp. 3d 271, 286 (E.D.N.Y. 2023); *see also United States v. Scott*, No. 14-CR-81 (JAM), 2015 WL 1525580, at *3 (D. Conn. Apr. 2, 2015). Cases in which similar evidence was excluded relied on the fact that the defendant's gang affiliations were not direct evidence of charged crimes and lacked sufficient probative value to outweigh the prejudice. *Elkins*, 70 F.3d at 83-84 (evidence of gang activity did not go to credibility and was inadmissible in cross-examination of defense witness). *Cf. Nelson*, 103 F. Supp.2d at 513-14 (reserving judgment until trial because gang membership "likely" had substantial probative value regarding some elements of the crime, but had a "much more tenuous relationship" with others).[6] The same conclusion is not warranted here.

For similar reasons, Rule 404(b) does not compel another result. "[A]n act that is alleged to have been done in furtherance of an alleged conspiracy is not considered a bad act within the meaning of Rule 404(b); rather, it is part of the charged act of conspiracy." *United States v. Pimentel*, No. 99-CR-1104 (SJ), 2001 WL 185086, at *4 (E.D.N.Y. Jan. 22, 2001). To the extent

---

[6] The third case on which Jones relies, *Roark*, involved conspiracy charges, but the inappropriate testimony addressed by the Eighth Circuit discussed the activities and general reputation of the Hell's Angels, of which the defendant was purportedly a member. *Roark*, 924 F.2d at 1433 ("Now, you've elected to try, at least partially the Hells Angels Motorcycle Club, which was not necessary in this case."). Neither Jones nor the Government has provided any indication that the Government plans to put on evidence regarding the general activities and reputation of Black Rain wholly separate from the acts and involvement of Jones. Accordingly, *Roark* has no bearing on the case before the court here.

Jones's relevant "acts" of allegedly joining and being affiliated with Black Rain could be considered evidence of his propensity to commit murder, that evidence is properly admitted as evidence of the charged conspiracy. *Id.*; *see also United States v. Ashburn*, No. 11-CR-303 (NGG), 2015 WL 588704, at *12-13 (E.D.N.Y. Feb. 11, 2015) ("[T]he purpose of CW-1's testimony is to establish the background and structure of the conspiracy charged in this case, and to explain Ashburn's leadership role and the basis for mutual trust among conspirators. As a result, the court finds this evidence is relevant, probative, and admissible.").

Accordingly, Jones's motion to preclude evidence regarding Jones's gang affiliation and his nickname "Sha" is DENIED.

## IV. CONCLUSION

Jones's First Motion *in Limine* is GRANTED in part and DENIED in part, and the Government's First Motion *in Limine* is GRANTED in part and DENIED in part.

The court rules as follows:

- The Government may introduce evidence of the murder of Lloyd and the unnamed individual mistakenly shot in a first attempt to murder Arroyo; the court defers judgment on the Government's motion to present evidence of the Jazz murder conspiracy.

- The Government is precluded from introducing evidence of underage female workers in Black Rain, or any sexual relationship Jones had with any such underage workers.

- The Government is precluded from introducing evidence of Jones's 1984 convictions for criminal possession of narcotics in the fourth degree and attempted criminal possession of a weapon in the second degree.

- The Government may introduce Jones's November 2017 statements to law enforcement, except for the details of Jones's 2017 narcotics trafficking activities. Jones may introduce omitted portions of his November 2017 statement to law enforcement to the extent necessary to provide context to the portions introduced by the Government or otherwise avoid misleading the jury.

- The Government may introduce evidence of Jones's gang membership, including the use of his nickname "Sha."

SO ORDERED.


Dated:     Brooklyn, New York
           May 28, 2024

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge